SIDNEY COHEN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51772–51774, 51778. Filed October 31, 1956.

*Jerome Kamerman, Esq.*, for the petitioners.
*John J. Madden, Esq.*, and *John James O'Toole, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Robert Leib, Docket No. 51773, Betty R. Cohen, Docket No. 51774, and Bertram R. Zucker, Docket No. 51778.

OPINION.

KERN, *Judge:* The issues for decision herein are:

1. Whether Betty Cohen and Robert Leib were partners in the firm operating as L. Cohen & Sons during the calendar year 1945.

2. Whether income from any sales was omitted from the L. Cohen & Sons partnership income tax return for 1945 and, if so, the amount thereof.

3. Whether respondent erred in determining that the cost of "merchandise bought for sale" was overstated on that partnership return.

4. Whether any part of the deficiencies determined against the taxpayers was due to fraud with intent to evade tax.

To determine whether Betty Cohen and Robert Leib were partners in L. Cohen & Sons during 1945 with Sidney Cohen and Bertram Zucker it is necessary to consider all of the factors established by the evidence which are relevant to such an inquiry. *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293. No one of these factors predominates in importance, and all must be viewed together in determining whether there existed a valid partnership or not. *Commissioner* v. *Culbertson*, 337 U. S. 733.

The Commissioner points out that on January 2, 1945, Betty Cohen and Robert Leib signed a formal partnership agreement with Sidney Cohen and Zucker affirming their previously existing partnership relationship; that the partnership's income tax return for 1945 listed Betty Cohen and Robert Leib as partners in the firm; that both Betty and Leib contributed important services to the firm during the year 1945; and that the individual income tax return of each for that year reflected the amounts received as a partner of L. Cohen

& Sons. Both Betty and Leib devoted their full time to their positions with the firm. These positions were important ones as Betty Cohen was the forewoman of the jewelry factory and Leib was Sidney Cohen's "executive assistant." Leib worked full time for the firm and, even though he lacked the knowledge of the business which the other partners possessed when he first joined the firm in 1944, he had a good business background, superior education, and the indubitable cachet to advancement arising from his status as the son-in-law of Sidney and Betty.

The petitioners argue that the partnership agreement was meaningless and should not be considered sufficient in itself to establish the existence of the partnership. Betty Cohen and Robert Leib testified that they did not know what they were signing at the time they signed the partnership agreement. Betty Cohen testified that she signed only because her husband told her to sign, and Leib testified that he signed the agreement without reading it because he did not want to incur the displeasure of his father-in-law, Sidney Cohen. The petitioners contend that there was no bona fide intent that Betty Cohen and Robert Leib were to be actual partners in L. Cohen & Sons. We find this difficult to believe. We are of the opinion that the record establishes a bona fide intent on the part of all the parties that Betty and Robert should be partners in the firm, and that not only the agreement but their statements and services bear this fact out. After considering all the relevant facts, we are convinced that Betty Cohen and Robert Leib were partners of L. Cohen & Sons during the calendar year 1945.

The second issue for decision is whether the proceeds of some sales were omitted from the partnership income tax return for 1945. There is no longer any issue as to the years 1942, 1943, and 1944 as the deficiencies for those years have been stipulated by the taxpayers. The petitioners admit that the practice followed during the years 1942, 1943, and 1944 of omitting sales from the partnership records was continued for a portion of the calendar year 1945 until an accounting firm was retained in July 1945 to determine any and all sales which had been omitted from their records for that year. The petitioners claim, however, that the journal entry posted by the accounting firm and representing the additional sales made in 1945 under fictitious names accounted for all of the sales made under fictitious names during that year, with the exception of sales in the approximate amount of $5,250 inadvertently omitted, and hence that there was no omission of sales on the partnership income tax return for 1945 with the exception noted. The respondent determined that the correction of the books and records by the accounting firm did not include all of the sales which were made by the partnership under various fictitious names in 1945. The partnership for several years

had been in the practice of concealing the amount of sales made by using fictitious names and by not recording on its books the sales made under those names. The payments for these sales were made by checks which were made out to the fictitious names and were cashed at a check-cashing agency. The proceeds from these checks were never recorded on the partnership records. A considerable part of the cash thus derived was used to make the partnership's purchases of silver on the black market. Petitioners admit the confusion in their books and records but point to the fact that an honest attempt was made in 1945 to correct the records of the partnership as to the amount of sales made. Petitioners, though now conceding that a few sales were unaccounted for even after the correction of their records by the accounting firm, contend that the respondent's determination of additional unreported sales for 1945 in the amount of $111,810.21 was excessive, unreasonable, and arbitrary.

Upon a most unsatisfactory record, and relying considerably upon the rule as to the burden of proof with regard to deficiencies determined by the respondent and the inadequacy of petitioners' explanations, we have concluded that there were additional unreported sales by L. Cohen & Sons in 1945 of $101,109.81.

Another question of fact before us is whether the petitioners are entitled to a larger allowance for "merchandise bought for sale" in 1945 than the Commissioner allowed in computing the net income of the partnership. In the partnership return for 1945 a deduction of $690,003.46 was claimed for cost of purchases. Of this amount the respondent allowed $317,064.98, which was reflected on the books and records of the partnership and evidenced by canceled checks and invoices, and disallowed the $133,201.40 claimed for cost of purchases which, though reflected on the books and records of the partnership, was supported only by checks drawn to cash or to fictitious names, and also disallowed an additional amount of $239,140.39 which was the amount determined by the accounting firm to be the cost of the additional sales of $295,235.05. However, the respondent did allow as cost of "merchandise bought for sale" the sum of $206,589.11 in addition to the $317,064.98 properly reflected on the partnership books and adequately supported. Thus, respondent allowed over 55 per cent of the amount of the cost of purchases in dispute, and the petitioners have failed to show that the partnership is entitled to any additional deductions on this account.

The final issue for decision is whether the petitioners are liable for the 50 per cent fraud additions determined by the respondent because a part of the deficiencies was due to fraud with intent to evade tax. The burden of proof is on the respondent and the proof must be clear and convincing. Our conclusion that the petitioners have not successfully borne the burden of proof as to the greater part of the defi-

ciencies in tax determined by respondent does not relieve the respondent of the necessity of sustaining his burden as to the fraud issue. *L. Schepp Co.*, 25 B. T. A. 419, 437. The respondent stresses the pattern of fraud which was set by the partnership in the earlier years of 1942, 1943, and 1944, the years for which the then partners of L. Cohen & Sons have agreed to substantial deficiencies and fraud additions. The respondent claims that this pattern continued in 1945, and that a part of the deficiency for that year was also due to fraud with intent to evade tax. The record does show that the partnership made sales under fictitious names in an effort to conceal the true amount of sales during at least a part of 1945, but the record also shows that the petitioners retained an accounting firm sometime in the middle of the year 1945 to straighten out their records and to determine what sales income had been omitted from the books and records. As a result of this investigation, additional sales in the amount of $295,235.05 were entered by petitioners' accountants on the books of the partnership, and these additional sales were included in the partnership's return filed for the taxable year.

As we view the record on the fraud issue after making due allowance for the burden of proof which is here upon the respondent, the books of petitioners' firm were fraudulently kept until the middle of 1945, but after that time there was an earnest and conscientious attempt by petitioners, acting through reputable accountants in connection with a voluntary disclosure, to assemble information which would make it possible to prepare an honest return of their income for the year 1945. As of the end of this tax accounting period and in connection with the return filed for this year (1945), we are unable to conclude that petitioners were then acting fraudulently; and it is with regard to the return filed for the taxable year that fraud must be shown. *John B. Arnold et al.*, 14 B. T. A. 954, 974. Because of petitioners' manner of doing business and the inadequate, confused, and fraudulent books and records kept by them until the middle of the taxable year, some $5,250 of sales was inadvertently omitted despite the well planned and well executed work of petitioners' accountants. There were also other questionable sales under fictitious names. Since the petitioners did not successfully bear the burden of proving that these sales were not made by them, we have included them in petitioners' gross income. However, on this issue of fraud the burden of proof is on respondent and therefore, in considering this issue, we cannot assume that these questionable sales were made.

Thus, we are left with a situation which may be described as follows: Petitioners' business was carried on and their books and records were maintained in a fraudulent manner until the middle of the taxable year; at that time a voluntary disclosure was made to respondent

and petitioners made a conscientious effort through capable accountants to straighten out their affairs; at the end of the taxable year the accountants prepared and petitioners filed a return which petitioners considered in good faith to be a true and correct return of their income for the taxable year; but this return, because of petitioners' *past* fraudulent conduct and records, proved to be incorrect in that it inadvertently omitted a relatively small amount of sales.

Under these circumstances, we are unable to conclude that respondent has borne his burden of proof on the fraud issue.

*Decisions will be entered under Rule 50.*