Cecil R. Warren v. Commissioner. Cecil R. Warren and Helen M. Warren, (Husband and Wife) v. Commissioner.
Warren v. Commissioner
Docket Nos. 63272, 63281.
United States Tax Court
T.C. Memo 1959-15; 1959 Tax Ct. Memo LEXIS 228; 18 T.C.M. (CCH) 75; T.C.M. (RIA) 59015; January 30, 1959
James A. Ronayne, Esq., 120 Broadway, New York, N. Y., for the petitioners. James J. Quinn, Esq., and William T. Holloran, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion By a deficiency notice dated April 17, 1956, respondent determined deficiencies in income tax and additions to tax against Cecil R. Warren, petitioner in Docket No. 63272, for the years 1945 and 1946 as follows: Additions to Tax under
294(d)
294
Year
Deficiency
293(b)
(1)(A)
(d)(2)
1945
$500.54
$250.27
$46.44
$30.97
1946
960.43
480.21
90.00
60.00
On the same date *229 respondent determined deficiencies in income tax and additions to tax against Cecil R. Warren and Helen M. Warren, petitioners in Docket No. 63281, for the years 1947, 1948, and 1949 as follows: Additions to Tax under
294(d)
294
Year
Deficiency
293(b)
(1)(A)
(d)(2)
1947
$ 1,638.60
$ 819.30
$ 91.38
1948
1,456.76
728.38
$104.39
89.48
1949
49,344.82
24,672.41
2,953.09
The deficiencies result from respondent's determination that petitioners' taxable net income for the years in question exceeded the income reported as "computed upon the basis of increase in net worth during the taxable years, with adjustment for personal and other non deductible amounts paid." By affirmative allegations in respondent's answers the issue of fraud is raised. The parties have stipulated many facts relating to petitioners' net worth. As a result the principal issue is whether petitioners received gifts prior to October 1949 from the mother of petitioner Helen M. Warren and received in the latter part of 1949 assets and funds as an inheritance from her subsequent to her death on October 15 of that year, as petitioners contend, or, as respondent *230 contends, the assets and funds received by petitioners were in reality theirs and were placed by them in the mother's estate as part of a scheme devised by petitioners for the purpose of fraudulently avoiding the ascertainment by respondent of their correct taxable income by use of the so-called net worth method. Findings of Fact We find the facts to be as stipulated by the parties and incorporate herein by this reference the stipulation of facts and supplemental stipulation of facts filed herein, together with the exhibits attached to such stipulations. Cecil R. Warren, one of the petitioners herein, was appointed to the Bureau of Internal Revenue, United States Treasury Department, on July 1, 1935, and remained in such employment until he resigned on October 31, 1950. His salary from 1935 through 1949 was in the following amounts for the years shown: Year
Amount
1935
$1,300.00
1936
2,600.00
1937
2,600.00
1938
2,800.00
1939
2,800.00
1940
2,900.00
1941
3,200.00
1942
3,800.00
1943
3,800.00
1944
4,600.00
1945
5,153.61
1946
5,738.16
1947
6,337.78
1948
6,822.06
1949
7,451.48
He was a very frugal person and spent little money during *231 the period 1936 through 1949. On one occasion he bet on a horserace. Cecil R. Warren filed Federal income tax returns for the years 1945 and 1946 showing the receipt of taxable income in the following respective amounts: $5,153.61 and $5,808.16. Petitioners Cecil R. and Helen M. Warren, who were married in 1934, filed joint Federal income tax returns for the years 1947, 1948, and 1949 showing the receipt of the following amounts of taxable income: 1947
$6,538.75
1948
7,997.75
1949
7,146.77
For a short time after their marriage the petitioners resided with Helen Warren's mother, Rella Roakes, in Washington, D.C. In 1936 the petitioners purchased a home in Flushing, Long Island, New York, for the sum of $5,800, which they continued to own throughout the years 1936 through 1949. In 1936 the Warrens moved from Washington, D.C., to their residence in Flushing. At this same time Rella Roakes also moved to Flushing and resided with the petitioners until her death on October 15, 1949. In none of the income tax returns filed by petitioners was Rella Roakes named as a close relative with an income of less than $500 receiving more than one half of her support from petitioners, *232 and petitioners never claimed an exemption on account of her. However, in a Selective Service questionnaire filed in 1941 Cecil Warren stated that Rella Roakes was a dependent of his within the meaning of the Selective Service Act. Rella Roakes' first husband was Irby Reid, who was an employee of the Columbia Phonograph Company and later the Bridgeport Brass Works. In 1895 the Reids became the parents of a daughter, Rella Winn Reid (hereinafter sometimes referred to as young Rella). Around 1905 the Reids were divorced. Irby Reid subsequently remarried. When he died in 1924 he left nothing to his first wife. After her divorce from Reid in 1905 Rella married a sergeant in the United States Marine Corps named Olin W. Roakes. Petitioner Helen M. Warren is the daughter of Rella Roakes by this marriage and is the half sister of young Rella. Prior to 1912 young Rella lived with her mother and stepfather in Washington, D.C. In that year she married Arthur Erisman and moved to Brookline, Massachusetts. A daughter was born of this marriage. In 1920 Roakes resigned from the Marine Corps and moved with his wife to Brookline, Massachusetts. Erisman employed Roakes as a manager of one of his *233 stores in Boston at a salary of $50 per week. Around 1923 Erisman and his wife had marital difficulties and separated. They were subsequently divorced around 1928. In 1924 young Rella went to New York for the purpose of "studying music" and was employed about that time by the late Florenz Ziegfeld, a theatrical producer. Subsequently, young Rella appeared in numerous musical comedy shows on Broadway and enjoyed a large income for a number of years. She made financial contributions to her mother and half sister during those years. Erisman continued to employ Roakes in Boston until 1928 and Rella Roakes kept house for Erisman. Roakes and his wife then returned to Washington, D.C., where he was employed by the Peoples Drug Stores. Commencing in 1924 and ending in 1936 young Rella's daughter lived with Rella Roakes, her grandmother. Young Rella gave her mother $50 a month to reimburse her for the expense of supporting her daughter and in addition thereto paid for her daughter's clothes. Rella Roakes owned two houses in Washington, D.C., one on South Dakota Avenue and the other on 20th Street, N.E. She purchased these houses with the help of gifts of money from her sister. Roakes *234 died April 4, 1933, and left a negligible estate. Commencing in 1933 Rella Roakes received a pension from the United States Government which by the time of her death in 1949 had been increased to $40 per month. She was not regularly employed and was not engaged in any business or profession. In 1944 young Rella married a man named Seppeler. Rella Roakes executed a will on February 1, 1947, which provided as follows: * * *
"FIRST: I hereby revoke any and all other Wills, Codicils or instruments of testamentary disposition made by me at any time heretofore. "SECOND: I direct my executors hereinafter named to pay all of my just debts and funeral expenses as soon as practicable after my death. "THIRD: I give and bequeath to my daughter, RELLA WINN SEPPELER, my diamond ring containing three diamonds in a white gold setting; I also give and bequeath to my said daughter RELLA WINN SEPPELER the following pieces of hand-painted china: wine decanter, vase, tray and pitcher set, and two plate and teacup sets; and I also give and bequeath to my said daughter, RELLA WINN SEPPELER, a cemetery plot in Fort Lincoln Cemetery, Prince George County, Maryland, known as Site #2, Lot 119, *235 Section E. "FOURTH: I give and bequeath to my granddaughter, RELLA ESTHER GOECKER, my mink scarf containing three skins. "FIFTH: I give and bequeath to my great-granddaughter, ROSEMARY RICE, my sapphire lavalier with platinum chain. "SIXTH: I give and bequeath to my daughter, HELEN M. WARREN, for and during her natural life, hereby intending to create in my said daughter an estate for and during her natural life only, the following items: set of Haviland china; set of flat silverware; silver tea set of four pieces; and oil painting of Rella Winn Seppeler and frame. Upon the death of my daughter, HELEN M. WARREN, I direct that said property be distributed to my granddaughter, RELLA ESTHER GOECKER, to be hers absolutely. Should my granddaughter, RELLA ESTHER GOECKER, predecease my daughter, HELEN M. WARREN, I then direct that the property be distributed to and amongst the children of RELLA ESTHER GOECKER. "During such life estate my said daughter, HELEN M. WARREN shall, as such life tenant, be entitled to the possession of the above-described property, and shall not be required to give any bond, security or undertaking as such life tenant or by reason of such life estate. Neither *236 my said daughter nor her estate shall be liable for any loss or damage in respect to the above-described property. I further direct that my said daughter shall not at any time during her lifetime be required to furnish any information or render any accounting whatsoever as to any of the above-described property. "SEVENTH: To my friend MRS. HEDY VOGEL, I give and bequeath my gold wrist watch and bracelet; to my friend MRS. ALICE MATTHEWS of Arlington, Virginia, I give and bequeath my gold breast pin set with diamonds, pearls and amethyst; to my friend MRS. FLORENCE PETRANEK I give and bequeath my pair of jet and gold earrings set with pearls; and to my friend MRS. THEOLINDA FAHIE I give and bequeath my cameo pin set in gold. "EIGHTH: I give, devise and bequeath all the rest, residue and remainder of my property and estate, real, personal and mixed, wheresoever situate, of which I may die seized or possessed or over which I may have testimentary control, or to which I may be entitled, of whatsoever the same my [may] consist, to my daughter, HELEN M. WARREN. Should my said daughter HELEN M. WARREN predecease me I then give, devise and bequeath all the rest, residue and remainder *237 of my property to my daughter, RELLA WINN SEPPELER. "NINTH: I hereby designate and appoint my daughter, HELEN M. WARREN executrix of this my Last Will and Testament and direct that my said executrix herein shall be required to give no bond or other security. Should my said daughter HELEN M. WARREN fail to qualify, I then nominate and appoint my daughter RELLA WINN SEPPELER as executrix." * * *
A Federal income tax return for the calendar year 1948 was filed in the name of Rella Roakes with the collector of internal revenue for the first district of New York. This return reported the receipt of dividends in the amount of $650, interest in the amount of $200, and "other income" in the amount of $1,487.04. The last item was made up of capital gains calculated as follows: Date
Selling
Gain
Name of Security
Acquired
Date Sold
Cost
Price
or Loss
United M&M
March,
April,
$1,578.91
$1,690.85
$111.94
1947
1948
Baltimore & Ohio
5/20/48
10/11/48
1,417.00
1,573.96
156.96
Central Railroad of
N. J. Bonds
5/20/48
10/11/48
2,407.00
3,385.92
978.92
Universal Pictures
10/15/48
10/23/48
3,105.93
3,401.12
295.19
TOTAL TAXABLE GAIN:
*238 TAXABLE
Over 6 mos.
50%
Name of Security
Less 6 mos.
100%
United M&M
$ 55.97
Baltimore & Ohio
156.96
Central Railroad of
N. J. Bonds
978.92
Universal Pictures
295.19
$1,487.04
No Federal income tax returns were filed in the name of Rella Roakes for the years 1936 to 1947 in the various districts of the Internal Revenue Service embracing the greater New York City area. In 1947 young Rella purchased a residence at Clinton Corners, Dutchess County, New York, for $16,000. This residence was adjacent to property subsequently purchased by the petitioners in 1949. In September of 1949 Cecil Warren agreed to purchase the aforementioned Clinton Corners property from young Rella for $17,000, plus approximately $1,000 for furnishings and equipment, both sums to be paid in cash, plus the assumption of a mortgage on the premises in the approximate amount of $9,000. As part of the terms of sale Cecil Warren paid a deposit of $5,000 in currency to young Rella which she needed and demanded in order that she could make a deposit on another residence that she had selected and a short time later gave to her $12,000 in currency. This other *239 residence which she wanted very much to buy could be bought by her for $25,000 in cash. During the course of a visit by the petitioners and Rella Roakes to young Rella's residence in Clinton Corners in September of 1949 Rella Roakes, in the absence of petitioners, gave to young Rella Treasury bonds having a face value of $9,000, so that the latter could pay off the mortgage on her house. Rella Roakes had these bonds in a briefcase belonging to Cecil Warren. At the time Rella Roakes handed the bonds to young Rella she said something to the following effect: "I hand you these because if Cecil gave them to you then you - I mean you would say he gave them to you and I give them to you." Young Rella then redeemed these bonds for $9,324.79, deposited the proceeds in her account at the Bank of Millbrook, and used substantially all of the proceeds of the sale to pay off the existing mortgage on the property. On November 19, 1949, young Rella deeded her Clinton Corners property to the petitioners. This deed was recorded on December 1, 1950. On June 1, 1948, young Rella and her half sister, petitioner Helen Warren, entered into partnership formed for the purpose of raising and selling chickens. *240 Helen Warren's capital contribution to the partnership was $7,500 which she paid in currency. On December 17, 1949, after the death of Rella Roakes, the partnership was dissolved and young Rella drew a check payable to the order of "Helen M. Warren" in the amount of $1,584.15 in final settlement of the share of the partnership assets held in the name of Helen Warren and gave the check to her. Shortly thereafter Cecil Warren brought the check back to young Rella and asked her to add to the payee's name "(Executrix For estate of Rella M. Roakes)." Pursuant to Cecil Warren's request, and without asking for any further explanation, young Rella made the change requested. The check was then deposited in an account at the Manufacturers Trust Company entitled "Estate of Rella M. Roakes, dec'd, Helen M. Warren Executrix" on December 27, 1949. On the Federal estate tax return filed in the name of the estate of Rella M. Roakes this amount was reported as an asset of the estate. On October 15, 1949, Rella Roakes died and Helen Warren was appointed the executrix of the estate pursuant to Rella's will dated February 1, 1947. On December 13, 1950, an estate tax return was filed by the executrix *241 with the collector of internal revenue, first district of New York, and was subsequently examined by an internal revenue agent who recommended that the return be accepted as filed. The internal revenue agent who examined the said estate tax return only concerned himself with the fact that the value of the assets, as reported, was correct. The Federal estate tax return was prepared by an attorney for the estate from information submitted to him by Helen Warren, with the exception of such financial data that would be in the possession of banks and brokerage firms. The Federal estate tax return reported a gross estate of $91,211.94, made up of the following: 7 United States Defense Bonds
$ 156.50
18 United States Savings Bonds
384.50
25 War Savings Bonds
506.75
48 Series E. Bonds
917.18
40M Treasury Bonds
41,506.98
9M Treasury Bonds
9,339.08
Bank Account
257.27
Loans Receivable
5,712.50
Cash on Hand
16,200.00
Cash from Interest Coupons
612.50
Building and Loan Association
1,570.09
Proceeds from Sale of Chickens at
Clinton Corners, New York
1,584.15
Credit Balance in Laidlaw & Co.
7,800.86
Income Tax Refund
101.83
Pension from United States Gov-
ernment
24.00
One 1949 Mercury Station Wagon
2,537.75
One 1947 Packard
1,000.00
Personal Property
1,000.00
$91,211.94
*242 In addition to preparing an estate tax return on behalf of the estate of Rella M. Roakes, the attorney for the estate also prepared and filed an individual Federal income tax return for Rella M. Roakes, decedent, for the period January 1 to October 15, 1949. This return was signed by Helen M. Warren as executrix and was filed with the collector of internal revenue, Brooklyn, New York, on June 15, 1950. The information reported on this return was also obtained from Helen Warren. This return reported the receipt of dividends in the amount of $714.75, interest in the amount of $664.75, and "other income" in the minus amount of $702.12. This latter amount represented the total net amount of capital gains resulting from seven sales of four different stocks having an aggregate cost basis of $15,158.40 less half the total amount of capital losses of $2,363.74 resulting from two sales of stock in one corporation having an aggregate cost basis of $5,210.08. Shortly after Rella Roakes' death in 1949 Cecil Warren came to young Rella's residence and handed her what purported to be a copy of an affidavit of her mother. This affidavit read as follows: "I, Rella M. Roakes, residing at 162-14 71st *243 Avenue, Flushing, N. Y., do hereby state and affirm the following: "I am past 65 years of age. I am a widow. I am the mother of Helen M. Warren, who is married to Cecil R. Warren and lives at 162-14 71st Avenue, Flushing, N. Y. "I hereby swear and affirm that I have made gifts to my daughter, Helen M. Warren of various amounts of cash each year since 1934, from $1000.00 to $5000.00 and other gifts of stocks and bonds and property. In addition I have made gifts to her for specific purposes, such as in 1936, when she and her husband bought their home. I gave them $1200.00 for their down payment. In 1946 I gave my daughter, Helen, a mortgage certificate of $2000.00, and in 1948 I gave her property on Eaton's Neck, Long Island. With respect to this property I did all of the preliminary negotiating in 1947. The purchase was not completed and, because of serious illness, I gave my daughter a Power of Attorney to not only complete the purchase of that property, but also over my personal property. The purchase was not completed until 1948, at which time I then decided my daughter should have the property in her own name. "In May 1949 I gave her and her husband $7000.00 to buy property *244 in Dutchess County, N. Y. "I hereby further swear and affirm that I have an older daughter to whom I have made substantial gifts at different times. I gave her $750.00 in 1941 to buy an automobile. In 1947 I gave her $6000.00 to buy her home. During 1949 I have given her approximately $30,000, of which $9000.00 has been used to pay off the mortgage on her home." Cecil Warren then asked young Rella to memorize the contents of the document as he was being investigated and "in case any of the boys came around" she would be able to remember it. In 1948 Helen Warren obtained title to real estate located at Eaton's Neck, Suffolk County, New York. The purchase price of this property was $8,400. Payment was made in the form of $4,000 in cash and a mortgage in the amount of $4,400. The cash payment included a check in the amount of $2,500 payable to Rella Roakes and endorsed by her to the sellers. The parties have stipulated that Rella Roakes transferred to petitioners in May 1949 the sum of $7,128.77, representing the proceeds from the sale of United States Treasury bonds sold for her account by the National Safety Bank & Trust Company. In Schedule G of the estate tax return filed *245 by Helen M. Warren as executrix the answer "no" was given to the question: "Did the decedent, at any time, make a transfer of an amount of $5,000 or more without an adequate and full consideration in money or money's worth, but not believed to be includible in the gross estate as indicated in the first paragraph * * * of the instructions for this schedule?" In the affidavit attached to this return and signed by Helen M. Warren was the statement: "* * * I have no knowledge of any transfers made or trusts created by the decedent during his lifetime of the value of $5,000 or more, other than bona fide sales for an adequate and full consideration in money or money's worth, except as stated in Schedule G * * *." On April 5, 1952, and in connection with the administration of the estate of Rella Roakes in the State court, Helen M. Warren signed an affidavit containing the following statements: "HELEN M. WARREN, being duly sworn deposes and says: I am the Executrix of the Estate of Helen M. Roakes. I am also her daughter. "For many years prior to my mother's death she lived with me. During all of these years my mother made gifts of money to both my sisters and myself to help us pay off *246 our mortgage, to help us buy a car and in many instances to help us buy our clothes. For a great number of years prior to coming to live with us, my mother resided in Washington, D.C.
"My mother was a widow at the time of her death. To the best of my knowledge she never was engaged in any business or profession and particularly for the last fifteen years when she lived with me. "While residing with me, my mother had her own room and furniture. She came and went as she pleased without my inquiring into her affairs. "After her death I went through her affairs I found the cash and other items listed in the Estate schedules. The source of these items I have no way of knowing as I never questioned my mother. With respect to the jewelry these items were merely of sentimental value and had absolutely no market value. The stone with the diamond ring was merely chips and not real stones." On October 5, 1953, and in connection with the administration of the estate of Rella Roakes in the State court, Helen Warren signed an affidavit containing the following statements: "HELEN M. WARREN being duly sworn deposes and says: I am the executrix of the Estate of Rella M. Roakes. "At the *247 time of my mother's death, she had a summer residence at Clinton Corners, New York, at which place she raised chickens and other live stock. She did not own the property. Immediately after her death I sold all of the live stock and whatever furnishings were in the house for which I received the sum of $1584.15, for the same. "Referring to my prior affidavit of April 5, 1952, the gifts that my mother made to my sister and myself, during the preceding five years prior to her death consisted of small sums of money, the aggregate of which did not exceed Five Thousand ($5,000.00) Dollars. None of these gifts were made in contemplation of death, and they were just given to us from time to time to help us defray our living expenses." On December 23, 1949, Newborg & Co., members of the New York Stock Exchange, sold on behalf of the estate of Rella M. Roakes "40M US Treas 2 1/2 67/72 Jun" bonds for $41,506.98 and "9M US Treas 2 1/2 67/72 Dec" bonds for $9,339.08 and remitted the proceeds to "Est. of Rella M. Roakes, Helen M. Warren, Exec." These bonds were received for sale by Newborg & Co. on December 22, 1949. The same number of the same bonds were listed as assets of the estate in the *248 estate tax return at a "Value at date of death" identical to the amount of the proceeds received from Newborg & Co. Among the bonds sold by Newborg & Co. were 2 $1,000 bonds which had been bought by the Grace National Bank of New York from C. F. Childs & Co. on November 3, 1949, and 8 $1,000 bonds which had been sold by the Grace National Bank to the National Safety Bank & Trust Company on October 31, 1949. With the exception of these bonds and the items "proceeds from sale of chickens at Clinton Corners, N. Y." and "Pension from U.S. Government," there is no evidence as to the acquisition or ownership of any of the assets in the estate tax return of Rella M. Roakes. The stipulation of facts filed herein by the parties reads in part as follows: "4. As of December 31, 1944, 1945, 1946, 1947, 1948 and 1949 the balances in the savings account of Cecil and Helen Warren at the Federation Bank and TrustCompany, New York, were, respectively, as follows: $557.37, $863.81, $987.18, $1,358.15, $465.52 and $186.95. "5. As of December 31, 1947, 1948 and 1949 the balances in the savings account of Helen Warren at the Bank of Manhattan, New York, were, respectively, as follows: $887.29, *249 $568.30 and $2,750.34. "6. As of December 31, 1944, 1945, 1946, 1947, 1948 and 1949 the balances in the special checking account of Helen Warren at the Bank of Manhattan were, respectively, as follows: $176.37, $15.57, $183.37, $169.23, $248.54 and $137.86. "7. As of December 31, 1949 the balance in the regular checking account of Cecil and Helen Warren at the Bank of Millbrook was $661.51. "8. As of December 31, 1947, 1948 and 1949 the balance in the brokerage account of Cecil and Helen Warren at Laidlaw and Company, New York, New York, were, respectively, as follows: $163.44, $215.27 and $332.83. "9. As of December 31, 1947, 1948 and 1949 Cecil and Helen Warren held common stocks in their brokerage account at Laidlaw and Company which had a cost basis to them in the following respective amounts for the years aforementioned: $1,641.56, $5,507.92 and $3,813.88. "10. As of December 31, 1944, 1945, 1946, 1947, 1948 and 1949 there were United States Savings Bonds outstanding under the names of Cecil Warren and/or Helen Warren in the following respective amounts (cost basis): $1,856.25, $2,625.00, $412.50, $281.25, $225.00 and $243.75. "11. During the taxable year 1936 Cecil *250 and Helen Warren purchased a home in Flushing, Long Island, New York, for the sum of $5,800.00, which they continued to own through the taxable years 1944 through 1949. As of December 31, 1944 and 1945 there was a mortgage liability outstanding on said home in the following respective amounts: $3,142.00 and $2,970.00. "12. On May 14, 1949 petitioners purchased a parcel of property located at Clinton Corners, New York, from a Mrs. Fischer for the sum of $16,000. As of December 31, 1949 said property had an outstanding mortgage liability of $9,250.00. "13. On May 9, 1949 the National Safety Bank and Trust Company paid by check to Rella Oakes $7,128.77, which represented the proceeds from the sale of United States Treasury Bonds sold by it for the account of Rella Oakes. The check was endorsed by Rella Oakes to Rella Roakes, who were one and the same person. Said check was then endorsed to the order of Helen M. Warren and/or Cecil R. Warren and was deposited in the Bank of Millbrook in the account of Cecil R. Warren and Helen M. Warren on May 13, 1949. "14. During the taxable year 1949 the petitioners purchased kitchen equipment from Cox Kitchens, Portchester, New York, in the amount *251 of $1,939.00. Said purchase was paid by a check drawn on the account of the estate of Rella M. Roakes. "15. During the taxable year 1949 the petitioners contracted for the construction of a new residence on property located at Clinton Corners, New York, for the sum of $33,500. As of December 31, 1949, there was an outstanding loan payable on the construction of said new residence in the amount of $32,131.98. * * *
"20. During the taxable years 1945, 1946, 1947, 1948 and 1949 the petitioners paid the following respective amounts in Federal and state income taxes: $800.00, $790.00, $854.00, $921.00 and $900.00. "21. During the taxable years 1946, 1947, 1948 and 1949 petitioners paid the following respective taxes on their home at Flushing, New York: $186.00, $212.00, $211.00, and $209.00. "22. During the taxable year 1948 the petitioners spent $72.00 on insurance for their Flushing, Long Island, New York, home. "23. During the taxable years 1945, 1946, 1947, 1948 and 1949 petitioners expended the following respective amounts for life and accident and health insurance premiums: $438.00, $438.00, $1,094.00, $1,094.00 and $1,094.00. "24. During the taxable years 1945, 1946, *252 1947, 1948 and 1949 the petitioners expended the following respective amounts for utilities services in their home: $400.00, $400.00, $420.00, $440.00 and $460.00. "25. During the taxable years 1945, 1946, 1947, 1948 and 1949 the petitioners expended the following respective amounts for food: $1,040.00, $1,300.00, $1,450.00, $1,560.00 and $1,560.00. "26. During the taxable years 1945, 1946, 1947, 1948 and 1949 the petitioners expended the following respective amounts for lunches, transportation fares, papers, and cigarettes: $520.00, $520.00, $520.00, $520.00, and $520.00. "27. During the taxable years 1945, 1946, 1947 and 1948 the petitioners made payments for the support of Cecil Warren's daughter Maxine Ann pursuant to a court order in the following respective amounts: $180.00, $180.00, $180.00 and $135.00. "28. During the taxable years 1947 and 1949 the petitioners paid the following respective additional Federal income taxes: $108.51 and $47.80. "29. During the taxable years 1945, 1946, 1947, 1948 and 1949 there were the following respective pension deductions from petitioner Cecil Warren's salary: $240.82, $287.02, $316.98, $369.64 and $447.30. "30. During the taxable *253 years 1945, 1946, 1947, 1948 and 1949 the petitioner Cecil Warren purchased United States Savings Bonds in the name of Helen M. Warren or Rella M. Roakes by way of salary deductions from Cecil Warren's salary in the following respective amounts: $243.75, $243.75, $243.75, $243.75 and $225.00. * * *
"32. During the taxable years 1945, 1946, 1947 and 1948 the petitioners received in interest income the following respective amounts: $6.89, $70.00, $90.97 and $80.00. "33. During the taxable years 1947, 1948 and 1949 the petitioners received the following amounts in dividends from stock owned by them: $105.00, $732.00 and $272.63. "34. During the taxable years 1948 the petitioners had a capital gain of $470.33. "35. During the taxable year 1949 petitioners had a capital loss of $1,849.11. "36. During the taxable year 1948 the petitioners received an income tax refund of $115.52. "37. During the taxable year 1949 the petitioners expended the sum of $9,620.40, for various equipment and services on their Clinton Corners, New York, property. Said expenditures were paid from the checking account of the Estate of Rella M. Roakes at the Manufacturers Trust Company. The above amount *254 includes the expenditures referred to in Paragraph 15." At the trial herein it was stipulated orally by counsel for the parties that "in the taxable year 1947, the petitioners obtained a mortgage certificate as one of the assets of their joint assets which they held through the taxable year 1948 and disposed of some time during the taxable year 1949," and that "the value of said mortgage certificate was $2,000." In a Federal income tax return for the calendar year 1950 filed by "Cecil R. Warren and Helen M. Warren, d/b/a Pennacre Farms, Clinton Corners, N. Y." the depreciation schedule listed tractor and equipment, trucks, "Sheds-corn crib corrals, pens," and "Cattle-breeding" as having been acquired by taxpayers in 1949 at a total cost of $27,900. In that year the purchase of machinery by Cecil and Helen Warren for their newly acquired farm at a cost of $18,000 was financed by their giving a note for the purchase price, which the then husband of young Rella signed as guarantor and which he eventually had to pay. In 1949 the income tax return filed by petitioners for the year 1948 was examined by the Intelligence Unit of the Internal Revenue Service. In 1953 an investigation *255 of petitioners leading to the determinations here involved was made by respondent's agents upon receiving information from young Rella to the effect that she "wondered where [her] mother could have gotten $92,000," that Cecil Warren was spending money which she "knew he never earned," and that she had been asked to memorize the copy of the purported affidavit of her mother. Opinion KERN, Judge: Unless the returns filed by petitioners for the taxable years here involved were false or fraudulent with intent to evade tax, section 276, Internal Revenue Code of 1939, the respondent is precluded from assessment or collection by section 275 of such Code. The burden of proving fraud with regard to each of the returns is on respondent and "the proof must be clear and convincing." Sidney Cohen, 27 T.C. 221, 228. Doubtful questions which may relate both to the amount of deficiencies and also to the issue of fraud must be resolved against respondent on the latter issue, even though they are to be resolved against petitioners with regard to the amount of deficiencies. Sidney Cohen, supra; L. Schepp Co., 25 B.T.A. 419, 437. Therefore, in determining *256 whether some or all of the returns filed by petitioners for the taxable years were false or fraudulent with intent to evade tax, we can consider only those facts stipulated or established by clear and convincing proof. In these cases the respondent has relied upon the so-called net worth method in establishing the existence of unreported taxable income for each of the taxable years as the basis of his contention that the returns for these years were false or fraudulent with intent to evade tax. We have set out in our extensive findings those facts which we regard as having been established by the voluminous record before us. With regard to some of the years there is no unexplained increase in net worth, while with regard to others in which there were unexplained increases in net worth (but in amounts far less than those determined by respondent) there was a failure on the part of respondent not only to prove a likely source of taxable income in addition to that reported by petitioners, but also a failure to negative by clear and convincing proof all possible sources of nontaxable income. See United States v. Massei, 355 U.S. 595. While many aspects of these cases are *257 puzzling and cause us to suspect the good faith and honesty of petitioners (who did not testify at the trial herein), we must be convinced of fraud and not merely suspect it. We conclude that on the issue of fraud respondent has not borne the burden of proof which is upon him, and that therefore the statute of limitations has run with regard to the years before us. Decisions will be entered for the petitioners.